**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   DONNA WATERS

                                                Chapter 13
                                                Case No.  05-54936 (RTL)

        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

Linda S. Reinheimer , Esq.
Reinheimer & Reinheimer
Attorneys for the Debtor

Joel A. Ackerman , Esq.
Zucker, Goldberg & Ackerman, LLC
Attorneys for Secured Creditor Washington Mutual Bank

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

On January 21, 2009, the court entered an order granting the Debtor's unopposed motion to Set the Amount Due and for Attorney Fees and Costs that fixed the amount necessary to satisfy the mortgage on the Debtor's residence at $108,241.32.  Now before the court is a motion for reconsideration by the mortgagee, Washington Mutual, who has since been acquired by Chase Bank.  Initially, the court intended to grant the motion and determine the proper mortgage payoff amount.  However, after reviewing the parties' submissions, the court finds the evidence submitted by the moving party to be incompetent and incomprehensible.  The regrettable nature of the record does not allow the court to come to any determination of the correct payoff figure

and is insufficient to change the outcome of the order as originally entered. Nevertheless, the Debtor has conceded that the amount due is $112,872.06, and the prior order will be amended to reflect that amount. The motion for reconsideration is denied in all other respects.

## JURISDICTION

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases and proceedings related to cases under Title 11 of the United States Code to the bankruptcy court. This is a case and a core proceeding that may be heard and determined by a bankruptcy judge under 28 U.S.C §157(b)(1) and (2)(B) concerning the value of a secure creditor's claim for the purposes of a mortgage payoff under a Chapter 13 plan.

## BACKGROUND

On October 15, 2005, the Debtor, Donna Waters filed for relief under Chapter 13 of the Bankruptcy Code. That same day, Ms. Waters also filed a plan outlining her intent to use Chapter 13 to afford her the opportunity to sell or refinance her home. The plan was later confirmed and the order confirming the plan was entered on March 3, 2006.

The plan originally contemplated for the sale or refinance of the Waters home by October 2006, but this did not happen for nearly two years after the anticipated date. Fortunately, Ms. Waters was able to acquire a refinancing offer from America's First Finance that allowed for a fixed interest rate and lower monthly payments. She moved for the court's permission to obtain the refinancing on September 29, 2008.

With the court's October 22, 2008, approval of her motion to obtain post-petition

financing, Ms. Waters sought a payoff statement from Washington Mutual. By December 2, 2008, Washington Mutual provided a payoff in the amount of $117,931.74 (a second statement dated three days *later* inexplicably *reduces* the payoff figure to $117,922.27). Though Ms. Waters disputed the calculation of the payoff figure, the closing went ahead on December 5th and a check was tendered to Washington Mutual for $118,276.75.

Ms. Waters subsequently moved to set the amount due and for attorney fees and costs on December 19, 2008. She argued that she had overpaid the amount due, and she disputed the calculation method of the payoff, the validity of the lender's fees and costs, and the principle figure used in the payoff. Taking the position that the payoff should have been $108,241.32, Ms. Waters requested a disgorgement of $10,035.43 from Washington Mutual as well as $1,000 in sanctions for its "culpable conduct" in causing the overpayment. The motion proceeded unopposed and was granted by the court on January 21, 2009.

Less than a month later, the lender filed the instant motion for reconsideration. In its moving papers, Washington Mutual argues that it had not received notice of the motion by neither mail nor electronic notice from the court's PACER/ECF system. Washington Mutual notes that there was no indication in the certificate of service that moving papers were sent by mail, that none of its contact information was included on the PACER electronic notice listing, and that its attorneys were not included on the PACER electronic notice listing either. The Lender also opposes the sanctions, arguing that its good faith basis to challenge the calculation method Ms. Waters relies upon. Subsequently, Ms. Waters filed opposition to the reconsideration motion.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The motion was heard on April 7, 2009, and the court reserved decision.  Since then, the court has struggled to make sense of the record as provided by the parties.  The court has also sought additional submissions from the parties in the attempt to conclusively determine what the payoff should be.  Unfortunately, after wading through the numerous documents in the record, the only thing the court can conclusively determine is that the multitude of flaws in the record preclude the court from effectively and fairly ruling on the motion for reconsideration.

**Deficiencies with the Moving Party's certification**

The moving papers of the instant reconsideration motion are fraught with evidentiary issues.  For instance, the motion primarily relies upon a certification by Washington Mutual's attorney: in paragraph 13 of his certification, the attorney asserted that the amount necessary to pay off the loan was $117,922.27.  However, Washington Mutual's attorney is not a competent witness to have asserted such a fact.  Rule 602 of the Federal Rules of Evidence requires that "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."  FED. R. EVID. 602.  No foundation had been laid to support a finding that the attorney possessed any personal knowledge of the facts and details of Ms. Waters's mortgage or of Washington Mutual's accounting methods.  *See In re Weiss-Wolf, Inc.*, 60 B.R. 969, 981 (Bankr. S.D.N.Y. 1986) (finding that an affidavit was insufficient for summary judgment purposes because the affiant was the party's attorney and lacked personal knowledge of the facts stated in his affidavit); *compare with*, *Cool, Cool, Water LLC v. Blackstone Capital Partners LP*, No. 05-02318, 2007 WL 1071943, at *11 (Bankr. D.N.J. 2007) (finding that an attorney was competent to testify where the affidavit concerned matters

within his personal knowledge: client representation and law firm matters).

Furthermore, the attorney introduced the lender's records of the Waters mortgage payment history in paragraph 16. Again, he is not competent witness to have introduced such hearsay evidence. The documents are offered to prove the facts asserted in the document: the dates and corresponding payment months that Ms. Waters tendered her mortgage payment, and the months that she was in arrears. Documents of the kind sought to be admitted may be admissible under the business records exception to the hearsay rule. FED. R. EVID. 803(6). However, the business records exception requires that foundation testimony is made by a "custodian or other qualified witness, or by certification," that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business. *U.S. v. Pelullo*, 964 F.2d 193, 200 (3d. Cir 1992); FED. R. EVID. 803(6). Once again, no evidence had been provided establishing that the attorney is a custodian or qualified witness to lay a foundation essential for the admission of business records. Regardless, the attorney failed to properly lay the foundation for the admission of business records even if the court were to find that he was a qualified witness. *See Pelullo*, 964 F.2d at 200.

Moreover, the court has some concern that the payment history offered is not a record made in the ordinary course of business. Instead, the payment history appears to be a compilation produced specifically for this litigation, made by unknown persons. The court comes to this conclusion because of the various errors and inconsistencies of the payment history, as described further on in this opinion. Federal Rule of Evidence 1006 allows for the

admission of compilations subject to the requirement that, "The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place." FED. R. EVID. 1006. This has been interpreted by courts of appeal to require submitting parties to explicitly invoke Rule 1006, describe the nature of the summary, and affirmatively make available the source materials in a reasonably convenient manner. *See Air Safety v. Roman Catholic Archbishop*, 94 F.3d 1, 7-8 (1st Cir. 1996). Furthermore, courts have ruled that the admission of a summary also depends on whether the underlying materials are themselves admissible. *Pelullo*, 964 F.2d at 204 (holding that summaries should not have been admitted because they were based on inadmissible hearsay). This often means that a submitting party should lay a foundation for the admissibility of the underlying evidence. *See US v. Harmas*, 974 F.2d 1262, 1269 (11th Cir. 1992) (finding that the district court did not abuse its discretion in admitting a summary where the moving party laid a proper foundation). Washington Mutual has failed show that (1) it explicitly invoked Rule 1006 and made the originals available to Ms. Waters, and (2) the underlying data used to develop the compilation is admissible.

**Issues with Washington Mutual's mortgage payment history**

The post-petition mortgage payment history supplied by Washington Mutual is at best incomprehensible. The court struggled to make sense of the payment history in order to fairly ascertain what payments were due, what payments were made, and what the total post-petition arrears were. The court was ultimately unable to come to any conclusive answer for those inquiries for several reasons. First, the lender did not indicate the monthly due dates each payment is being credited to, so the court could not determine whether payments were late or which months are in arrears. Further adding to the confusion is the fact that for every single

"date received" action recorded in the payment history is another "total payment due"; this sometimes resulted in the absurd consequence of a monthly payment due more than once in a month. The lender also apparently maintains a suspense account for the Debtor's mortgage, as demonstrated in the header of the payment history. However, no history of the suspense account was given with the payment history. The court also finds troubling that the escrow payment increased multiple times in the post-petition payment history without any documentation or information why.

Information about stipulation payments, per an October 3, 2006, order resolving the lender's certification of default, is also included on the payment history. However, the information is unintelligible, as it either does not show whether the stipulation payments were made or appears to credit Ms. Waters with a payment even on occasions where her payment checks apparently bounced. Additional attempts to reconcile the post-petition payment history included in the moving papers (Docket #64, Exhibit H) with the payment histories included with Washington Mutual's prior stay relief motion (Docket #25) and certification of default (Docket #35) reveal more inconsistencies. For example, in the certification attached to the September 5, 2006, stay relief motion, the payment received on 3/22/2006 was marked as having insufficient funds to satisfy the payment. There is no such indication of insufficient funds for that date in the lender's Exhibit H payment history. Furthermore, the stay relief certification payment history appears to skip item #6 and the April 2006 payment application. In another example, the post-petition payment history attached to the lender's March 2, 2007, certification of default indicates that no payments were made from December 2, 2006, through March 1, 2006. However, in the Exhibit H payment history, there are two payments made in that period, one

7

returned for insufficient funds in January, but another that cleared on February 28, 2007.

**Inaccurate amortization schedules**

The court's confusion has only been further augmented by the various inaccurate and changing amortization schedules. In the original moving papers, Washington Mutual included an amortization schedule (Docket #64, Exhibit F) calculated from a start date of April 1, 2001, a principal of $117,000, and 7.375% interest amortized over 30 years (360 payments). This yielded a monthly principal and interest ("P/I") payment of $807.90, as also reflected in the Waters note and mortgage. This however, did not match the $851.79 monthly P/I amount due as indicated on the included post-petition payment history (Docket #64, Exhibit H). No explanation for the difference was proffered in the certification.

Ten days after the motion to reconsider, on February 23, 2009, Washington Mutual filed an additional exhibit with the court, Docket #65. It was a lone amortization schedule with no certification attached. The second schedule appeared to have been calculated from a start date of March 1, 2004, a principal balance of $119,790.54, and 7.375% interest amortized over 326 payments. The resulting $851.79 P/I payment from this amortization schedule finally matched with the lender's post-petition payment history. However, no explanation was given for the change in the amortization schedule, the differing monthly P/I payment, or the discrepancy between the P/I payment specified in the note and mortgage and this new P/I payment.

Attempts to reconcile this new amortization schedule with the lender's proof of claim revealed additional inconsistencies. The proof of claim filed by Washington Mutual indicated a four-month prepetition arrears, and a principal balance of $117,726.09. That principal balance corresponded with the beginning balance of payment #18 on the new amortization schedule.

Looking up the bankruptcy petition date on the amortization schedule showed that the bankruptcy petition date of October 15, 2005, fell after payment #20 was due. Thus, according to the new amortization schedule, the Debtor was in fact only three months in arrears prepetition instead of the four months asserted in the proof of claim.

Concerned by the inconsistencies and inexplicable changes in the P/I monthly payment, the court requested additional information from the parties by email correspondence on April 30, 2009. The court received Washington Mutual's response on May 21, 2009, from a paralegal in the attorney's office. Included with the response was new documentation evidencing a loan modification in the beginning of 2004; this loan modification was never explained nor mentioned in any prior filing by the parties. Also included was yet another new loan amortization schedule. This third schedule corrected an error in the prior schedule with the start date of the loan modification. Per the terms of the recently revealed loan modification agreement, the new P/I payments were to begin on February 1, 2004, instead of on March 1, 2004 as previously indicated. This new amortization schedule finally reconciled with the four-month arrears as stated in the lender's proof of claim.

The lender's response was again tainted with evidentiary issues and other problems. The attorney's paralegal is not a competent witness to have testified about the mortgage payment history, arrears, and amortization of the Debtor's mortgage, as it has not been established that she had any personal knowledge of those facts. FED. R. EVID. 602. As an additional matter, the response was fraught with mathematical errors and factual inaccuracies. In one part of the response, the lender noted, "This loan was modified in 2004, the new payment effective 04/01/04 was $1,299.53 which was $851.79 (P&I) and $371.49 (escrow)." The sum of the given P&I and

9

escrow payments equals $1223.28 instead of the $1,299.53 figure stated. In another example, the lender asserted, "The total delinquency column of the post petition payment history shows the running difference between what the debtor should have paid and what they did pay. For example, the 12/19/2005 payment should have been $1,230.83 but the debtor only paid $1299.53, a difference of $68.70. Each payment thereafter was short so the deficiency increased each month. For example, the next payment on 12/19/2005 was also short $68.70 leaving a total difference of $137.40." It is stated that in the example, the debtor was short, but a quick survey of the numbers reveals that the debtor overpaid and the cited difference of $68.70 is actually in the debtor's favor.

**Issues with the Debtor's contributions**

While this opinion has thus far served as an admonition for Washington Mutual and their counsel, the court would be remiss if it did not address the Debtor in kind. Ms. Waters's motion to Set the Amount Due and for Attorney Fees and Costs was primarily supported by a certification by her attorney. Once again, the Debtor's attorney was not a competent witness to assert the facts contained in the certification. FED. R. EVID. 602. No foundation was developed to support a finding that the attorney possessed any personal knowledge of the facts and details of the Waters mortgage. Additionally, Ms. Waters supplied the court with an inaccurate amortization schedule. The schedule supplied appears to have been calculated from the original note and mortgage: a start date of April 1, 2001, a principal of $117,000, and 7.375% interest amortized over 30 years (360 payments). However, this did not properly reconcile with the monthly P/I payments Ms. Waters had actually been paying and the court sought information regarding the discrepancy. The Debtor initially denied the existence of a loan modification in

correspondence to the court dated May 8, 2009. Only when Washington Mutual produced copies of the loan modification, did the Debtor abandon that position. Furthermore, while Ms. Waters rightfully criticized the payment history submitted by the lender, it is unfortunate she did not use this opportunity to submit her own payment history or proof of payments.

Though Ms. Waters's proofs and contributions are less than sterling, the motion proceeded without objection and was ultimately granted by the court; the issues with the Debtor's contributions are not so egregious as to warrant disturbing the status quo.

**Resolution of the mortgage payoff**

Since the motion for reconsideration was heard, the court received submissions from the parties that helped to clarify the facts surrounding the Waters case. As the picture of what had transpired with the mortgage slowly came into focus, it seems that a majority of the difference between the disputed positions on the mortgage payoff arose from the conflicting amortization schedules. In Ms. Waters's original motion to set the amount due, she relied upon an amortization schedule derived from the original note and mortgage. Washington Mutual relied upon the new values from a loan modification entered into on January 2, 2004. In light of the revelation with the loan modification, the Debtor has reassessed their payoff calculations; in a May 22, 2009, communication to the court, the Debtor conceded the payoff to be $112,872.06. The court will revise the prior order to fix the mortgage payoff to the new amount of $112,872.06.

## **CONCLUSION**

The regrettable nature of the record does not allow the court to come to any determination of the correct payoff figure. Since the motion, the Debtor has conceded that the

amount due is $112,872.06, and the prior order will be amended to fix the payoff at that amount. Otherwise, because the court finds the evidence submitted by the moving party to be so flawed as to prevent it from fairly and effectively ruling on the motion for reconsideration, the court will not change the outcome of the order as originally entered.  The motion for reconsideration is denied in all other respects.


Dated: July 21,2009                    **/S/Raymond T. Lyons**
                                       United States Bankruptcy Judge